UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 05-360-JBC

STEPHEN W. FRITZ and
LORI B. FRITZ,                                                                                PLAINTIFFS,

V.                    MEMORANDUM OPINION AND ORDER

CAMPBELL HAUSFELD/
SCOTT FETZER COMPANY, ET AL.,                                                   DEFENDANTS.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the motions of the defendants, Campbell Hausfeld/Scott Fetzer Company ("Campbell") and Briggs & Stratton Corporation ("Briggs & Stratton"), for summary judgment (DE 40, 43); Campbell's motion in limine (DE 41); and Briggs & Stratton's motion to exclude (DE 42). The court, having reviewed the record and being otherwise sufficiently advised, will grant the defendants' motions for summary judgment and deny as moot Campbell's motion in limine and Briggs & Stratton's motion to exclude.

**I. Factual Background**

This is a products liability action involving a pressure washer purchased by the plaintiff, Stephen Fritz, on October 9, 2004. The pressure washer at issue was manufactured by Campbell and was equipped with a gasoline engine manufactured by Briggs & Stratton. This engine was outfitted with a muffler guard that extended toward the deck of the washer.

The day after Fritz bought the washer, he began using it to clean the upper

portion of his home. After running for about forty minutes, the washer ran out of gas. Fritz refueled the washer, moved it roughly fifteen feet from his driveway to his front yard, and restarted it. After he did so, Fritz noticed that the washer's high pressure hose was either against or caught behind one of the wheels of the pressure washer. When Fritz attempted to move the hose away from the wheel, a stream of water from a breach in the hose was injected into his right thumb.

The plaintiff seeks relief against Campbell and Briggs & Stratton under theories of strict products liability, negligence, and breach of warranty.[1] Essentially, the plaintiff alleges that the defendants took inadequate steps to ensure that the high pressure hose of his washer would not come into contact with the engine's hot exhaust and that the defendants' actions were the cause of his injury.

The plaintiff's proposed product defect witness is Dr. O.J. Hahn. Dr. Hahn is a retired University of Kentucky professor who holds a Ph.D. in mechanical engineering; he taught mechanical engineering at UK for roughly thirty years. In February of 2006, he inspected the pressure washer purchased by Fritz pursuant to "the standard steps of engineering investigations, ASME outlines and the protocol in [his] course on engineering safety . . . ." Exhibit 1 to DE 41, at 1. Based on his investigation, Dr. Hahn concluded that any one of three alternative designs could have improved the washer's safety at minimal cost: (1) an extension of the muffler

---

[1] In his complaint, the plaintiff also asserted a claim for punitive damages. However, in response to the defendants' motions for summary judgment, the plaintiff concedes that "no punitive damages have been established." DE 44, at 7.

2

guard that protected the hose from the engine's exhaust; (2) a relocation of the hose connections away from the exhaust; and (3) the placement of a stiff coiled spring around the hose near its attachment point so that it could not touch the hot exhaust. *Id.* at 1-2. Thus, he intends to testify that the "cause of the injury to Mr. Fritz . . . was the failure of the designer/manufacturer to protect the high pressure hose from the hot exhaust." *Id.* at 2.

The plaintiff has also designated Charles Coones, P.E., as a rebuttal witness. Mr. Coones is a professional engineer who concentrates his practice in the areas of safety and fire investigation. *See* DE 45, at 1; Exhibit 2 to DE 42 (Curriculum Vitae of Charles Coones). Dr. Coones intends to render the following three opinions at the trial of this case: (1) contact between the hose and muffler reasonably could have been foreseen; (2) the warnings provided by the defendants were inadequate to prevent the injury to the plaintiff; and (3) the cause of the injury was a defect in the pressure washer's muffler guard. *See* Exhibit 4 to DE 41, at 1-2.

**II. Summary Judgment Standard**

When considering a motion for summary judgment, the Court must determine that there are "no genuine issues as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation*

*v. Catrett*, 477 U.S. 317, 322 (1986). A court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The significant question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986).

### III. Legal Analysis

Though not explicitly stated in their briefs, all of the parties appear to agree that Kentucky law applies in this diversity action. In Kentucky, a party injured by a product can bring suit for that injury under three different theories: (1) breach of warranty under the Uniform Commercial Code; (2) negligence; or (3) strict liability in tort. *Ostendorf v. Clark Equip. Co.*, 122 S.W.3d 530, 535 (Ky. 2003). As stated above, the plaintiff has asserted claims under all three theories.

Strict liability may be imposed on the manufacturer of a defective product under a variety of theories, including defective design, manufacturing defect, and failure to warn. *Clark v. Hauck Mfg. Co.*, 910 S.W.2d 247, 250 (Ky. 1995). In this case, the plaintiff claims that the defendants' product was defectively designed. *See* DE 44, at 2 ("The only fact issue is whether the muffler should be shielded a wee bit more to protect the hose from contacting the muffler."). In design defect cases, a product is considered "defective" only when "it is made according to an unreasonably dangerous design." *Estate of Bigham v.*

4

*DaimlerChrysler Corp.*, 462 F. Supp. 2d. 766, 771 (E.D. Ky. 2006) (quoting *Jones v. Hutchison Mfg., Inc.*, 502 S.W.2d 66, 69 (Ky. 1973)). Under this analysis, the manufacturer is presumed to know the qualities and characteristics, and the actual condition, of his product at the time he sells it, and the question is whether the product creates "such a risk" of an accident of the general nature of the one in question "that an ordinarily prudent company engaged in the manufacture" of such a product "would not have put it on the market." *Montgomery Elevator Co. v. McCollough by McCollough*, 676 S.W.2d 776, 780 (Ky. 1984) (quoting *Nichols v. Union Underwear Co., Inc.*, 602 S.W.2d 429, 433 (Ky. 1980)).

When the claim asserted is against a manufacturer for deficient design of its product, the distinction between the so-called strict-liability principle and negligence is of no practical significance so far as the standard of conduct required of the defendant is concerned. *Jones*, 502 S.W.2d at 69-70. The difference is that negligence depends on what a prudent manufacturer, by the exercise of ordinary care, should have discovered and foreseen, while strict liability depends on what he would have anticipated had he been aware of the condition of the product when he put it on the market. *Worldwide Equip., Inc. v. Mullins*, 11 S.W.3d 50, 55 (Ky. Ct. App. 1999) (citation omitted). The foundation of both theories, however, is that the product is "unreasonably dangerous." *Ostendorf*, 122 S.W.3d at 535 (quoting *Ulrich v. Kasco Abrasives Co.*, 532 S.W.2d 197, 200 (Ky. 1976)).

Finally, even when a plaintiff who is injured by a product asserts a claim pursuant to a breach-of-warranty theory, the plaintiff must still prove that the

5

product is defective. *McCoy v. Gen'l Motors Corp.*, 47 F. Supp. 2d 838, 839 (E.D. Ky. 1998); *see also Montgomery Elevator Co.*, 676 S.W.2d at 782 ("The sole question in a products liability case is whether the product is defective as defined in *Nichols v. Union Underwear* . . . .").

Thus, under all three of the theories asserted by the plaintiff, he is required to prove that the product manufactured by the defendants was defective (that is, unreasonably dangerous). The plaintiff asserts that the proposed testimony of Dr. Hahn is sufficient evidence from which a jury could find that the pressure washer was defective. However, Kentucky law firmly maintains that "proof of nothing more than that a particular injury would not have occurred had the product which caused the injury been designed differently is not sufficient to establish a breach of the manufacturer's or seller's duty as to the design of the product." *Jones*, 502 S.W.2d at 70; *see also Brock v. Caterpillar, Inc.,* 94 F.3d 220, 224 (6th Cir. 1996) (applying Kentucky law) ("[P]roof that technology existed, which if implemented, would feasibly have avoided a dangerous condition, does not alone establish a defect.").

Dr. Hahn's proposed testimony, as summarized in his expert report, bears a striking similarity to the type of testimony deemed insufficient in *Jones* and *Brock*. Dr. Hahn presents three different alternative designs (one of which is or was used by another manufacturer) that he claims would have prevented the plaintiff's injury and then reasons that the defendants' failure to properly design the product caused the plaintiff's injuries. He says nothing about industry standards or practices, the

6

state of the art in the industry, similar accidents involving this or other products, or other factors relevant to the issue of whether the defendants' product is actually defective.[2]

This case is also similar to *Stewart v. Gen'l Motors Corp.*, 222 F. Supp. 2d 845 (W.D. Ky. 2002), in which the plaintiff asserted products-liability claims when she was injured by an allegedly defective airbag. In holding that the plaintiff had failed to present sufficient evidence of a product defect, the district court reasoned as follows:

> Plaintiff contends that the untethered nature of the air bag made it unreasonably dangerous, and therefore defective. . . . William Rosenbluth, Plaintiff's engineering expert, concluded only that: "the driver air bag is a relatively long-throw, untethered air bag." . . . and "internal tethers, which were well understood when this car was designed, would have restricted the throw of this air bag" . . . . Even if Rosenbluth believed that an untethered bag caused greater injury in these circumstances, that falls far short of proving that it is unreasonably dangerous. . . . [E]ven when the evidence is viewed in a light most favorable to Plaintiff, it establishes only that it was theoretically possible for Defendant to use a different type of air bag in Plaintiff's vehicle, not that the type of air bag actually used was defective or unreasonably dangerous.

*Id.* at 848. In the same sense, Dr. Hahn presents only the "theoretical possibility"

---

[2]As previously noted, Campbell has moved to exclude the testimony of Dr. Hahn pursuant to Fed. R. Evid. 702. Because his testimony is insufficient to show the existence of a product defect, however, the court finds that his opinions would not "assist the trier of fact to understand the evidence or to determine a fact in issue" as required by Rule 702. *See also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591-92 ("Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."). Thus, even if Campbell's motion directed toward Dr. Hahn were not mooted by court's granting of the defendants' motions for summary judgment, the court would be inclined to exclude Dr. Hahn's testimony as irrelevant.

that a different design could have prevented the plaintiff's injury.

For the foregoing reasons, the court concludes that the defendants are entitled to judgment as a matter of law because, even taking into account Dr. Hahn's opinions, the plaintiff has failed to show the presence of the most fundamental element of his claims: a defective product.[3]  Accordingly,

**IT IS ORDERED** that the defendants' motions for summary judgment (DE 40, 43) are **GRANTED**.

**IT IS FURTHER ORDERED** that Campbell's motion in limine and Briggs & Stratton's motion to exclude (DE 41, 42) are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the jury trial scheduled on June 25, 2007, is hereby **CANCELLED**.

---

[3]Both defendants have also moved to exclude the testimony of Charles Coones.  However, Mr. Coones was designated as a rebuttal witness, and his testimony should therefore be considered only in the event that the plaintiff's other evidence creates a genuine issue of material fact on his claims against the defendants.  Since the court has found that there are no such issues of fact, it need not consider whether Coones's opinions are admissible rebuttal evidence.

In addition, the plaintiff has averred that Mr. Coones is "not being asked to comment on any of the intricacies related to the working of the engine . . . . He is asked only to provide an opinion in the area of his expertise which happens to include safety and the placement of hoses near hot exhaust."  DE 45, at 2.  The court has concluded, however, that the plaintiff's case is fatally flawed because he has not shown the existence of a product defect.  Since Mr. Coones's testimony would not be helpful in resolving this issue, it would therefore not create any genuine issues of fact even if he were not a rebuttal witness.

8

Signed on May 29, 2007

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY